IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CHARGES E. BRAMLETT, # K-91341,** )<br>)<br>**Plaintiff,** )<br>)<br>vs. )<br>)<br>**MARYLIN LIGGET,** )<br>**DR. MARK S. CARICH,** )<br>**and JESSICA STOVER,** )<br>)<br>**Defendants.** ) | Case No. 12-cv-1128-JPG |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Charles E. Bramlett, who is confined in the Big Muddy River Correctional Center ("BMRCC") after having been adjudicated a Sexually Dangerous Person ("SDP"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983.[1] Plaintiff's original complaint (Doc. 1) was dismissed pursuant to Federal Rule of Civil Procedure 8. He then filed his First Amended Complaint (Doc. 6) to comply with this Court's order at Doc. 3. Plaintiff's motion to submit revised complaint (Doc. 5) is **GRANTED**, and the amended complaint is reviewed herein.

Plaintiff claims that Defendant Ligget (mailroom supervisor) interfered with his mail and access to religious material. Further, Defendants Carich (former administrator of the SDP program) and Stover (social worker) retaliated against him by placing him in an undesirable housing situation.

---

[1] Civilly committed sex offenders in Illinois are subject to the PLRA (28 U.S.C. § 1915 *et seq*). *Kalinowski v. Bond*, 358 F.3d 978, 978-79 (7th Cir. 2004). Persons civilly committed under the Sexually Dangerous Persons Act are deemed to be pretrial detainees, not convicted prisoners. *See Allison v. Snyder*, 332 F.3d 1076, 1078-79 (7th Cir. 2003).

More specifically, Plaintiff claims that on November 23, 2010, Defendant Ligget refused to allow him to have enrollment forms from "Set Free Ministries" which had been sent to him in the mail (Doc. 6, p. 4).  Plaintiff requested her to provide him with regulations on what documents he was permitted to receive, but she did not respond, and Plaintiff filed a grievance over the incident.  Defendant Ligget destroyed the enrollment forms on January 3, 2011.  *Id.*

Similarly, on September 26, 2011, Plaintiff received five sets of gospel tracts (20 copies each) from "Moments With The Book" (Doc. 6, p. 5).  Defendant Ligget told Plaintiff that he was not allowed to have multiple copies of the same item, and he must send them home or have them destroyed.  Plaintiff again requested the pertinent regulations without response, and filed a grievance.  It appears that Plaintiff chose to return these religious tracts in light of Defendant Ligget's "threat" (Doc. 6, p. 6).

On several other occasions, Defendant Ligget interfered with Plaintiff's personal and legal mail.  An outgoing letter to Plaintiff's sister was returned to him on December 26, 2010, because he had written a greeting on the outside of the envelope (Doc. 6, p. 4).  When Plaintiff tried to cover up the writing and re-send the envelope, Defendant Ligget refused to send it out (Doc. 6, p. 5).  Defendant Ligget returned another outgoing letter to Plaintiff on February 2, 2011, for having a notation of the contents on the outside of the envelope (Doc. 6, p. 5).  Plaintiff filed grievances over these incidents.  Finally, on August 23, 2011, Plaintiff sent legal mail to an attorney.  It was returned to BMRCC on September 13, 2011, and was opened by Defendant Ligget despite being clearly marked as privileged legal mail.  Plaintiff claims that Defendant Ligget interfered with his mail in retaliation for the grievance he filed over the November 2010 confiscation of his religious material as well as later grievances against her (Doc. 6, p. 5).

As to Defendants Carich and Stover, Plaintiff recites that on March 8, 2011, they tried to

force him into a "dangerous celling arrangement" with inmate Victor Blissit "for punishment for our not getting along with past cellies" (Doc. 6, p. 5). Plaintiff filed a grievance over this action. Later, on October 7, 2011, they moved Plaintiff from Wing 4C, which he describes as a "therapeutic environment," to general population in Wing 4B. *Id*. In the new location, he was subject to "threats and intimidation" from general population inmates, and was "within reach" of a declared enemy, inmate Roy Shivers. *Id*. Plaintiff asserts that the first move was in retaliation for a lawsuit he filed against Defendant Carich (*Bramlett v. Carich*, Case No. 11-cv-97-GPM-DGW (S.D. Ill., filed Feb. 3, 2011)). The second move was also in retaliation for the filing of that suit, as well as for the grievance Plaintiff filed over the attempt to place him with inmate Blissit (Doc. 6, pp. 5-6).

Plaintiff also claims that the actions of all the Defendants subjected him to cruel and unusual punishment and deprived him of due process (Doc. 6, p. 6).

In addition to damages, Plaintiff seeks injunctive relief and immediate release (Doc. 6, p. 7).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint. Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated a colorable federal cause of action against Defendant Ligget for denial of access to religious publications (Count 1), interference with personal and legal mail (Count 2), and retaliation (Count 3). Additionally, he states a cognizable claim against Defendants Carich and Stover for retaliation (Count 4). However, the claim in Count 4 against Defendants Carich and Stover, being unrelated to Counts 1-3 against Defendant Ligget, shall be severed into a separate action as outlined below. Further, the facts alleged do not support a viable cause of action for either cruel

and unusual punishment or denial of due process (Counts 5, 6, 7, and 8), and these claims shall be dismissed.

Plaintiff asserts a due process claim against Defendant Ligget (Count 5) for refusing to provide him with regulations, and a cruel and unusual punishment claim against her (Count 6) for interfering with his mail and destroying his religious forms.  Both claims are redundant, as they are based on the same set of facts already addressed in Counts 1-3 above, which shall receive further consideration.  *See Conyers v. Abitz,* 416 F.3d 580, 586 (7th Cir. 2005) (dismissing equal protection and Eighth Amendment claims based on same circumstances as free exercise claim because free exercise claim "gains nothing by attracting additional constitutional labels"); *Williams v. Snyder*, 150 Fed. App'x 549, 552-53 (7th Cir. 2005) (dismissing equal protection, access to courts, due process, and Eighth Amendment claims as duplicative of retaliation and freedom of religion claims).  Counts 5 and 6 shall therefore be dismissed.

The complaint does not state a due process claim against Defendants Carich and Stover for continuing to house Plaintiff outside of the therapeutic environment he enjoyed in Wing 4C (Count 7).  Inmates do not possess a liberty or property interest in their prison classifications or assignments.  *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (citing *Montanye v. Haymes*, 427 U.S. 236 (1976)).  Because Plaintiff's move to another part of the prison did not implicate any liberty or property interest, there can be no due process violation.

Finally, Plaintiff asserts that Defendants Carich and Stover subjected him to cruel and unusual punishment (Count 8) by trying to house him with inmate Blissit and then moving him to Wing 4B (Doc. 6, p. 6).  In the first instance, Plaintiff states in the complaint that Defendants Carich and Stover "tried" to place Plaintiff with inmate Blissit, yet he never says that he was actually placed in a cell with this hostile individual (Doc. 6, pp. 5, 6).  Thus, the complaint does

not show that Plaintiff was in fact put in harm's way. The later move to Wing 4B resulted in Plaintiff being "within reach" of a different hostile inmate. *Id.* However, Plaintiff never states that he received any specific threats or reported them to Defendant Carich or Defendant Stover, before or since his October 2011 move to that wing, nor does he state that he was ever subjected to any physical harm by any inmate there.

In order to prevail on a cruel and unusual punishment claim over prison officials' failure to protect him from harm by a fellow inmate, a prisoner must show that he was at risk of harm, that the Defendants knew about this risk and disregarded it, and that he was injured as a result. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008); *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). Where a plaintiff has been the victim of an attack, the defendants had to know that there was a substantial risk that those who attacked the plaintiff would do so, yet failed to take any action. *See Sanville v. McCaughtry,* 266 F.3d 724, 733-34 (7th Cir. 2001). A plaintiff must show that defendants were aware of a specific, impending, and substantial threat to his safety, generally by showing that the plaintiff complained to prison officials about a *specific* threat from an aggressor. *Pope v. Shafer,* 86 F.3d 90, 92 (7th Cir. 1996).

Plaintiff fails to state a claim here because there is no indication that he complained to Defendants Carich or Stover about any specific threat to his safety. Nor has he suffered any physical injury in connection with the above moves. Thus, Count 8 shall be dismissed.

The Court notes that if Plaintiff had stated a claim for a Defendant's failure to heed a request for protection from an inmate who had threatened him, he could be entitled to seek injunctive relief to prevent future harm. *Helling v. McKinney*, 509 U.S. 25, 33-34 (1993) ("a remedy for unsafe conditions need not await a tragic event"); *see also Benefield v. McDowall*,

241 F.3d 1267, 1272 (10th Cir. 2001).  This is exactly the remedy that Plaintiff is seeking in his other pending case before this Court, *Bramlett v. Carich*, Case No. 11-cv-97-GPM-DGW (S.D. Ill., filed Feb. 3, 2011).  Even if Plaintiff had stated a claim herein for injunctive relief, it would be duplicative of this ongoing case.

**Release from Confinement as a Sexually Dangerous Person**

As part of his prayer for relief, Plaintiff seeks immediate release from his confinement.  However, as Plaintiff was previously notified in Case No. 11-cv-97-GPM-DGW, release is not one of the available remedies in a civil rights action.  A petition for a writ of habeas corpus is the proper action "[i]f the prisoner is seeking what can fairly be described as a quantum change in the level of custody–whether outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or probation."  *Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991).  Additionally, a person committed under the Illinois Sexually Dangerous Persons Act, 725 Illinois Compiled Statutes 205/0.01 *et seq*., may seek release from the state court where the person was committed.  Thus, a § 1983 claim brought in federal court is not the correct avenue for Plaintiff to take in order to gain his release.

**Severance of Claims**

In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act.  *George,* 507 F.3d at 607, (citing 28 U.S.C. § 1915(b), (g)).  Plaintiff's complaint contains two sets of unrelated claims against different defendants:  Counts 1, 2, and 3 against Defendant Ligget for deprivation of religious materials, mail interference, and retaliation, and Count 4 against Defendants Carich and

Stover for retaliation. The claim in Count 4 is based on facts and incidents distinct from the events that gave rise to Plaintiff's claims against Defendant Ligget.

Consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall sever Count 4 herein, and shall open a new case with a newly-assigned case number for that claim. However, Plaintiff shall have an opportunity to voluntarily dismiss the newly severed case if he does not wish to proceed on that claim or incur the additional filing fee.

**Filing Fee**

Despite being warned twice, Plaintiff has failed to either pay the $350.00 filing fee or file a motion for leave to proceed *in forma pauperis* ("IFP") in this action. When this case was opened on October 26, 2012 (Doc. 2), Plaintiff was told to file his motion or pay the fee in 30 days, or face dismissal of the case. A blank form motion for IFP was mailed to him. He then was ordered to file an amended complaint in order to proceed (Doc. 3). When he filed the First Amended Complaint on November 28, 2012, he notified the Clerk that he had requested a copy of his inmate trust fund statement to be mailed to the Court (Doc. 4), suggesting that he intended to seek leave to proceed IFP. The Clerk notified him again on November 30, 2012 (Doc. 7), of the requirement to pay or file an IFP motion, and sent him another blank form. Plaintiff's trust fund statement (Doc. 8) was received on December 4, 2012, but to date, he still has never filed a motion to proceed IFP.

Plaintiff shall have one final chance to comply with the civil filing fee requirement. Plaintiff is **ORDERED** to file a motion for leave to proceed IFP, or in the alternative to make full payment of the $350.00 filing fee for this case, on or before April 4, 2013. If he fails to comply with this order, this action (and the newly severed case) shall be **dismissed with prejudice**. *See* FED. R. CIV. P. 41(b). The motion for leave to proceed IFP may also be filed in

the newly severed case upon Plaintiff's request, if he wishes to proceed in that matter (see below).  The Clerk is **DIRECTED** to mail Plaintiff another blank motion to proceed IFP.

**Disposition**

**COUNTS 5 and 6** are **DISMISSED** with prejudice as duplicative.  **COUNT 7** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.  **COUNT 8** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS HEREBY ORDERED** that Plaintiff's retaliation claim (**COUNT 4**), which is unrelated to the claims in Counts 1, 2, and 3, is **SEVERED** into a new case.  That new case shall be: Retaliation claim against **DEFENDANTS CARICH** and **STOVER**.

The new case **SHALL BE ASSIGNED** to the undersigned District Judge for further proceedings.  In the new case, the Clerk is **DIRECTED** to file the following documents:

(1) This Memorandum and Order
(2) The operative Complaint (Doc. 6)

Plaintiff is **ADVISED** that if, for any reason, he does not wish to proceed with the newly-opened case, he must notify the Court in writing on or before April 4, 2013.  Unless Plaintiff notifies the Court that he does not wish to pursue the newly opened action, he **will be responsible for an additional $350.00 filing fee** in the new case.  Service shall not be ordered on Defendants Carich and Stover until after the deadline for Plaintiff's response.

**IT IS FURTHER ORDERED** that the *only claims remaining in this action are COUNTS 1, 2, and 3 against Defendant Ligget*.  This case shall now be captioned as: **Charles E. Bramlett, Plaintiff, vs. Marylin Ligget, Defendant.**

**IT IS FURTHER ORDERED** that Defendants **CARICH and STOVER** are **TERMINATED** from *this* action with prejudice.

As to **COUNTS 1, 2, and 3**, which remain in the instant case, the Clerk of Court shall prepare for Defendant **LIGGET** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the Defendant cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file, nor disclosed by the Clerk.

Plaintiff shall serve upon Defendant (or upon defense counsel once an appearance is entered), a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of any document was served on Defendant or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate

Judge **Philip M. Frazier** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Frazier for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: February 28, 2013**

s/J. Phil Gilbert
**United States District Judge**